[Civil No. 1887. Filed April 19, 1921.]

[197 Pac. 227.]

# VERDE WATER AND POWER COMPANY, Appellant, v. SALT RIVER VALLEY WATER USERS' ASSOCIATION, PARADISE VERDE WATER USERS' ASSOCIATION, and PARADISE VERDE IRRIGATION DISTRICT, Appellees.

1. QUIETING TITLE—COMPLAINT, NOT SHOWING TITLE IN PLAINTIFF, HELD BAD ON DEMURRER.—Complaint to quiet title is bad on demurrer for want of sufficient facts to constitute a cause of action, if the facts stated fail to show title in plaintiff.

2. QUIETING TITLE—COMPLAINT AVERRING TITLE IN PLAINTIFF, FOLLOWED BY FACTS NOT SHOWING TITLE, DEMURRABLE.—If a complaint to quiet title avers title in plaintiff, and then proceeds to set forth the facts constituting the title, and such facts do not show title, demurrer will lie, the specific facts pleaded, and not general averments, controlling.

3. PLEADING—FACTS, NOT CONCLUSIONS, MUST BE PLEADED; DEMURRER DOES NOT ADMIT CONCLUSIONS.—Facts must be pleaded, conclusions of law being insufficient; and a demurrer will not confess or admit them.

4. EVIDENCE—OFFICIAL ACTS OF SECRETARY OF INTERIOR PRESUMED TO HAVE BEEN REGULAR AND FREE FROM FRAUD.—The official acts of the Secretary of the Interior of the United States are presumed to have been right and regular and free from fraud.

5. WATERS AND WATERCOURSES—RULE THAT RIGHT TO EASEMENT OVER PUBLIC LANDS RELATES BACK TO COMMENCEMENT OF WORK, ETC., DOES NOT APPLY AGAINST UNITED STATES.—The rule that the right to an easement for a reservoir, ditch, or canal over the public lands, claimed under United States Revised Statutes, section 2339 (U. S. Comp. Stats., § 4647), relates back to the commencement of the work or notice of appropriation, provided the work is prosecuted with due diligence, has no application as against the United States.

6. WATERS AND WATERCOURSES—POWER COMPANY, SEEKING TO ACQUIRE TITLE TO RESERVOIR SITE, ACTED UNDER REVOCABLE LICENSE FROM UNITED STATES, WHICH RIGHT COULD BE WITHDRAWN.—As to the federal government, prior to final completion of its reservoir, a water and power company, seeking to acquire title to the reservoir site under United States Revised Statutes, section 2339 (U. S. Comp. Stats., § 4647), was acting under a revocable permit or

° XXII Ariz.— 20

license, and cannot be heard to complain if the permit or license was withdrawn, even if a large sum of money had been expended in the enterprise in expectation of obtaining title; and the state court, in the company's suit to quiet title to such reservoir site, cannot say the Secretary of the Interior acted unjustly in making withdrawal of the site, though it may believe hardship was inflicted on the company; the secretary's discretion being absolute in the absence of fraud.

7. WATERS AND WATERCOURSES—SECRETARY OF INTERIOR AUTHORIZED TO WITHDRAW RESERVOIR SITE FROM PUBLIC ENTRY.—Under United States Compiled Statutes, sections 4700–4708, the Secretary of the Interior had authority to withdraw from public entry lands constituting a reservoir site sought to be appropriated by a water and power company.

8. WATERS AND WATERCOURSES—POWER COMPANY COULD NOT INITIATE CLAIM TO RESERVOIR SITE WITHDRAWN FROM ENTRY BY SECRETARY OF INTERIOR.—The order of the Secretary of the Interior of July 27, 1903, withdrawing from entry a reservoir site, never having been set aside, no valid claim to the lands embraced in such order could be initiated by a water and power company in the presence of such withdrawal, and notices of appropriation, posted subsequently by the company, were unavailable for any such purpose.

9. WATERS AND WATERCOURSES—FEDERAL LAWS RELATING TO PUBLIC LANDS PARAMOUNT AND EXCLUSIVE.—The laws of the United States in reference to the disposition of public lands of the United States are paramount and exclusive, and a water and power company could not acquire an easement on lands of a reservoir site, withdrawn from entry by the Secretary of the Interior, by virtue of any compliance with Civil Code of 1913, paragraphs 5337, 5338.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Affirmed.

Mr. J. K. Doolittle, for Appellant.

Messrs. Alexander, Christy & Baxter and Messrs. Gust & Smith, for Appellees.

BAKER, J.—This is an action to quiet title to the Horseshoe reservoir site. It is more convenient to

---

8. Withdrawal of public land from settlement for water-power or similar purpose, note, **Ann. Cas.** 1918C, 1008.

designate the parties here as plaintiff and defendants, as they were in the court below.

The defendant, Salt River Valley Water Users' Association, separately demurred to the plaintiff's complaint, filed in the action, on the ground that it did not state facts sufficient to constitute a cause of action. The defendants, Paradise Verde Water Users' Association and Paradise Verde Irrigation District, jointly demurred to the complaint on the same grounds. These demurrers were sustained, and the plaintiff, having failed to amend within the time fixed by the court, judgment was entered dismissing the complaint. From this judgment the appeal is taken.

Manifestly the question to be decided is the sufficiency of the complaint to entitle the plaintiff to the relief sought for, or to any relief. As before observed, it is an action to quiet title to the Horseshoe reservoir site. It is thoroughly settled that a complaint to quiet title will be bad on demurrer for want of sufficient facts to constitute a cause of action, if the facts stated therein fail to show title in the plaintiff (32 Cyc. 1351; 17 Ency. Pl. & Pr. 327), and if the complaint avers title in the plaintiff and then proceeds to set forth the facts which constitute the title, and such facts do not show title, a demurrer will lie. 32 Cyc., *supra;* 17 Ency. Pl. & Pr. 329. In other words, it is the facts specifically pleaded which will control, and not the general averments of the pleading. The narrow question, therefore, is this: Do the facts specifically stated in the complaint show title to the reservoir site to be in the plaintiff?

The complaint cannot be praised as a model of good pleading, but, stripped of its useless verbiage and bare conclusions, it sufficiently appears therefrom that the plaintiff is a corporation, and was organized under the laws of the state of Arizona in the year

1901. The corporation was formed apparently for the purpose of developing hydro-electric power for distribution and sale, and impounding and diverting the waters of the Verde River and irrigating arid lands therewith. It is claimed that the plaintiff acquired title to an easement in the land described in the complaint as the Horseshoe reservoir site under section 2339, Revised Statutes of the United States (U. S. Comp. Stats., § 4647), and also under the provisions of paragraphs 5337 and 5338, Revised Statutes of Arizona of 1913. The claim is based upon a number of notices of appropriation of the reservoir site and the waters of the Verde River. The first notice was posted August 15, 1901, by Prosper P. Parker and J. K. Doolittle. It was duly recorded and Parker and Doolittle, on the twenty-second day of October, 1901, conveyed all of their right, title, and interest acquired by said notice to the plaintiff. The next notice was posted by Augustus C. Sheldon and Prosper P. Parker on the twenty-ninth day of March, 1903. It was duly recorded, and Sheldon and Parker conveyed all their right, title, and interest acquired under the notice to the plaintiff on the twenty-second day of July, 1904. The corporation, acting through its president and vice-president, also posted, or caused to be posted and duly recorded, several other notices of appropriation at the Horseshoe reservoir or the dam site of the Horseshoe reservoir. The first of these last-mentioned notices was posted on the fourth day of May, 1905, the next on the twenty-fifth day of January, 1909, another on the twenty-third day of July, 1910, and yet another on the fourth day of November, 1912, and the last on the sixth day of March, 1916. On July 27, 1903, the Secretary of the Interior withdrew from any disposition whatever all of the public lands in townships 7 and 8 north, range 6 east, Arizona. These lands embraced the Horse-

shoe reservoir site.  The withdrawal was made under the first form of withdrawal authorized by section 3 of the act of June, 17, 1902 (32 Stat. 388, c. 1093 [Comp. Stats. 1916, §§ 4700–4708; 9 Fed. Stats. Ann., p. 1366, etc.]), and was made in connection with the Salt River Project in Arizona and for a reservoir site on the Verde River.

The foregoing is a sufficient statement of the material facts for the determination of the case, but before we can reach this inquiry it is necessary to get rid of several other allegations in the complaint. It is alleged:

"That on the eighteenth day of January, 1917, the Secretary of the Interior gave the public notice in relation to the Salt River Project provided for by section 4 of the Reclamation Act (which in accordance with the express provisions of that act should have been issued at least as early as June, 1904), which notice excluded from the Salt River Project all of the lands withdrawn as aforesaid in 1902, 1903, and 1904, and thus automatically vacated and terminated all of such withdrawals, and terminated all authority and jurisdiction of the Secretary of the Interior over the property involved in this suit."

It will be observed that the notice referred to is not given nor set out, nor is there any recital of its language.  That the notice had any reference to vacating the former withdrawal of the lands of the Horseshoe reservoir site is a forced inference from facts not found in the record.  Facts must be pleaded —conclusions of law will not do—and a demurrer will not confess or admit the latter.  It so happens in the present instance that the conclusion pleaded is contrary to the notice actually promulgated by the Secretary of the Interior under the provisions of section 4 of the Reclamation Act (32 Stat. 388 [Comp. Stats., § 4703; 9 Fed. Stats. Ann., p. 1366]), of which notice we take judicial knowledge (*Caha* v. *United States,*

152 U. S. 211, 38 L. Ed. 415, 14 Sup. Ct. Rep. 513 [see, also, Rose's U. S. Notes]), and the averment is therefore a nullity.

"Allegations which are contrary to the facts of which judicial notice is taken are not admitted, but are to be treated as a nullity." 21 R. C. L. 509; 12 Ency. Pl. & Pr. 1.

The complaint proceeds:

"That on the seventeenth day of July, 1902, ostensibly pursuant to the provisions of the Reclamation Act, but really in gross violation thereof, at the instigation of certain officials of the reclamation service, the Secretary of the Interior withdrew from public entry substantially all of the public lands east of the Agua Fria in Maricopa county north of the Arizona Canal and south of the plaintiff's canal and canal line, and west of the Agua Fria withdrew substantially all of the public lands between that stream and plaintiff's canal line staked upon the ground near the base of the White Tank mountains. . . .

"The construction of the Horseshoe reservoir was never at any time contemplated by any government official within the meaning of that word in the third section of the Reclamation Act. No surveys looking to the utilization of the Horseshoe reservoir site were ever initiated or prosecuted diligently, or otherwise, by the Secretary of the Interior, or under his direction. That no money for the construction of the Horseshoe reservoir was ever legally available or prospectively available. That no maps, plans or estimates of cost of the utilization of the Horseshoe reservoir site were ever prepared under the direction of the Secretary of the Interior. That at all the said times it was a matter of common knowledge that the Salt River Project and the Yuma Project would much more than exhaust the quota of the reclamation fund by statute allotted to Arizona. In this and other respects the initiation and maintenance of the aforesaid withdrawals were in gross violation of the express provisions and limitations of the Reclamation Act. . . .

"That the defendants, and each of them, threaten, intend, and propose to invade, occupy, and confiscate the Horseshoe reservoir site, the property of the plaintiff; but the exact method by which they intend to accomplish that purpose, whether in collusion or separately, or perhaps competitively, the plaintiff has been unable to find out. It is known, however, that they are united in this: That from ignorance of the facts or inability correctly to interpret them, or from some baser motive, by means of usurpatory and illegal acts by public officials, or by any available unjust procedure, the defendants, and each of them, threaten, intend, and propose to defraud the shareholders and water-right holders of the Verde Water & Power Company of their said valuable property, so patiently and deservedly earned, and the plaintiff is without any adequate remedy at law."

It will be observed that no facts are stated in these allegations from which fraud will necessarily be inferred or presumed, and nothing is charged as done or performed under the influence of corrupt motives or by corrupt means. The whole charge is couched in general and vague terms, and consists principally of arguments and conclusions in which the action of the Secretary of the Interior, in making the withdrawal, is characterized, in effect, as fraudulent and collusive, only because such withdrawal is supposed to be adverse to what plaintiff claims its rights to be.

The official acts of the Secretary of the Interior are presumed right and regular and free from fraud, and it would be an unheard of thing for a court of equity to set aside a solemn record of the land office or give the plaintiff injunctive relief against a defendant on such loose, inconclusive, and untraversable allegations of fraud.   10 R. C. L. 415, 416; *United States* v. *Atherton,* 102 U. S. 372, 26 L. Ed. 213; *Marquez* v. *Frisbie,* 101 U. S. 473, 25 L. Ed. 800 (see, also, Rose's U. S. Notes).

It is also alleged:

"By the maintenance of such withdrawals the plaintiff was therefore debarred from any expenditure in construction during that period, and the running of reasonable time for construction was suspended between those dates, or, to express the same fact in another way, the plaintiff's reasonable time for construction was lengthened by the maintenance of such withdrawals fourteen years six months and one day.

"The plaintiff has been further debarred from the consummation of its undertaking by the war exigencies of the United States government from April ·6, 1917, to February 28, 1920. By reason and by authority the minimum of reasonable time for primary construction to be allowed to a power and irrigation corporation, with the magnitude of undertaking of the Verde Water and Power Company, is at least seven years. Under the Parker and Doolittle appropriation of August 13, 1901, the plaintiff has to April 1, 1920, exhausted of its minimum reasonable time only one year two months and twenty-three days, and under each of its other appropriations only three months and twenty-one days."

By these allegations the plaintiff was evidently attempting to avail itself of the rule that the right to an easement for a reservoir, ditch, or canal, over the public lands claimed under section 2339, Revised Statutes of the United States, relates back to the commencement of the work or notice of appropriation, provided that the work is prosecuted with due diligence. This rule of relation, however, has no application as against the United States, and therefore any hindrance or impediment the plaintiff might have met with in the progress of the work on the reservoir is immaterial. *United States* v. *Utah Light & Ry. Co.* (D. C.), 242 Fed. 742.

We now come back to the main inquiry. As before observed, the plaintiff first bases his claim of title to the reservoir site on section 2339, Revised Statutes

(U. S. Comp. Stats., § 4647; 9 Fed. Stats. Ann., p. 1349), which reads as follows:

"Sec. 2339. Whenever, by priority of possession, rights to the use of water for mining, agriculture, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed. . . . "

This section of the statute was construed by the Supreme Court of the United States in the case of *Bear Lake & River Waterworks & Irr. Co.* v. *Garland,* 164 U. S. 1, 18, 19, 41 L. Ed. 327, 17 Sup. Ct. Rep. 712, in which case it was said:

"So far as the public land is concerned, over or through which these ditches for the canal were dug, the statutes above cited create no title, legal or equitable, in the individual or company that simply takes possession of such land. The government enacts that anyone may go upon its public lands for the purpose of procuring water, digging ditches for canals, etc., and when rights have become vested and accrued which are recognized and acknowledged by the local customs, laws, and decisions of courts, such rights are acknowledged and confirmed. Under this statute no right or title to the land, or to a right of way over or through it, or to the use of water from a well thereafter to be dug, vests, as against the government, in the party entering upon possession from the mere fact of such possession unaccompanied by the performance of any labor thereon. . . . It is the doing of the work, the completion of the well, or the digging of the ditch, within a reasonable time from the taking of possession, that gives the right to use the water in the well or the right of way for the ditches of the canal upon or through the public land. Until the completion of this work, or, in other words, until the performance of the condition upon which the right to

forever maintain possession is based, the person taking possession has no title, legal or equitable, as against the government. What, if any, equitable claims a party might have upon the government who did a large amount of work, but finally failed to complete the necessary amount to secure the water or right of way, it is not necessary to determine or discuss. Those equities would not, in any event, amount to an equitable title to the right of way, or to the use of the water, and so need not be here considered.

''The Bear Lake Company, therefore, never had any legal or equitable title to the land over or through which the ditch for the canal was dug, as against the government, until the ditch was completed.''

The United States Circuit Court of Appeals for the Ninth Circuit in the case of *United States* v. *Rickey Land & Cattle Co.* (C. C.), reported in 164 Fed. 496, construed the same section. It appeared that the defendant Rickey Land & Cattle Company were the actual owners of a large tract of land, that they had built several canals and spent a large amount of money for many years, had surveyed and monumented a reservoir site and constructed and purchased ditches to carry water into said reservoir site, but that the outlet from the reservoir had not yet been constructed, though work upon the same had commenced, and thereupon the Secretary of the Interior withdrew the site of said reservoir as in the case at bar.

The court held as follows:

''The practical use of said reservoir requires that water impounded therein shall be conducted from the reservoir into the West Fork of Walker River, and distributed from said West Fork in ditches taken out of that stream below the point where the water from the reservoir is discharged into said river, and in order to make any beneficial use of the water impounded in said reservoir by the distribution thereof, the reservoir must have an outlet or ditch conveying the water on to the land requiring irrigation lying below the reservoir. This outlet has not yet been

constructed, although it appears from the affidavit of the defendant Rickey that it is the intention of the defendant corporation to construct such outlet, and that work thereon has been commenced. . . .

"It is very clear that no one can under these sections acquire as against the government a vested easement in and to public lands for a reservoir site until the actual completion of the reservoir, so that the waters to be impounded therein could be applied to the beneficial uses contemplated by the irrigation system of which it forms a part. This was the construction placed upon these sections by the Supreme Court in *Bear Lake Irr. Co.* v. *Garland,* 164 U. S. 1, 41 L. Ed. 327, 17 Sup. Ct. Rep. 7.''

The foregoing authorities make it clear that the plaintiff did not acquire a vested easement in the public lands upon which the Horseshoe reservoir is situated as against the government. The easement could only vest upon the completion of the work, and the reservoir was not completed, neither had the waters of the Verde River been diverted or impounded at the time the Secretary of the Interior withdrew the lands from disposition. The complaint upon its face shows the foregoing facts although it is alleged that some $600,000 had been expended by the plaintiff in the enterprise. As to the government, prior to the final completion of the reservoir, plaintiff was acting under a revocable permit or license, and cannot be heard to complain if the permit or license was withdrawn, even if a large sum of money had been expended in the enterprise in expectation of finally obtaining title. *United States* v. *Utah Light & Ry. Co., supra; United States* v. *Rickey Land & Cattle Co., supra.*

In *Light* v. *United States,* 220 U. S. 523, 55 L. Ed. 570, 31 Sup. Ct. Rep. 485, the United States had suffered its public lands to be used for pasturage; and there grew up a sort of implied license that these

lands might be used so long as the government did not withdraw its consent. The court held that:

"Failure to object, however, did not confer any vested right on the complainant, nor did it deprive the United States of the power of recalling any implied license under which the land had been used for private purposes."

It held further that:

"The United States can prohibit absolutely or fix the terms on which its property may be used. As it can withhold or reserve the land, it can do so indefinitely."

It is not for this court to say that the Secretary of the Interior acted unjustly in making the withdrawal, although we may believe that a great hardship was inflicted upon the plaintiff. Congress has left the expediency and propriety of such withdrawal to the judgment of the Secretary of the Interior within the limitations fixed by the act (32 Stat. 388), and we have no right to interfere with his discretion in the absence of fraud. 22 R. C. L. 306.

"That a power may be injuriously exercised is no reason for a misconstruction of the scope and extent of that power." *Stearns* v. *Minnesota,* 179 U. S. 223, 45 L. Ed. 162, 21 Sup. Ct. Rep. 73.

The authority of the Secretary of the Interior to withdraw the lands of the Horseshoe reservoir site from public entry is beyond dispute. Section 3 of the act of June 17, 1902 (32 Stat. 388, c. 1093 [Comp. Stats., 1916, §§ 4700–4708; 9 Fed. Stats. Ann., p. 1366, etc.]), provides for the withdrawal of two distinct classes of land: First, public land required for any irrigation works contemplated under the provisions of the act; second, public lands believed to be susceptible of irrigation from said works.

The first class has been designated by the Land Department as "withdrawals under the first form," and the second class as "withdrawals under the sec-

ond form.'' In the withdrawal of lands under the first form there is no exception. In the withdrawal of lands under the second form there is an exception in favor of homesteads. We have already pointed out that the withdrawal of the Horseshoe reservoir site was under the first form.

The order of July 27, 1903, has never been set aside. No valid claim to the lands embraced in the order could be initiated by the plaintiff in the presence of such withdrawal, and the notices of appropriation posted on May 4, 1905, January 25, 1909, July 23, 1910, November 4, 1912, and March 6, 1916, were unavailable for any such purpose or purposes. *Hamblin* v. *Western Land Co.*, 147 U. S. 531, 536, 37 L. Ed. 267, 13 Sup. Ct. Rep. 353 (see, also, Rose's U. S. Notes); *Wood* v. *Beach,* 156 U. S. 548, 39 L. Ed. 528, 15 Sup. Ct. Rep. 410; *Spencer* v. *McDougal,* 159 U. S. 62, 40 L. Ed. 76, 15 Sup. Ct. Rep. 1026; *United States* v. *New Orleans Pac. Ry. Co.,* 248 U. S. 507, 63 L. Ed. 388, 39 Sup. Ct. Rep. 175.

What has already been said effectually disposes of the contention that the plaintiff acquired an easement in the lands of the Horseshoe reservoir site by virtue of a compliance with the provisions of paragraphs 5337 and 5338, Revised Statutes of Arizona of 1913. If it were otherwise, the effect would be to take from the United States ''their own lands, against their own will, and against their own laws.'' The laws of the United States in reference to the disposition of the public lands of the United States are paramount and exclusive. *Utah Power & Light Co.* v. *United States,* 243 U. S. 389, 61 L. Ed. 791, 37 Sup. Ct. Rep. 387.

We are of the opinion that no cause of action is stated in the complaint, and that the ruling of the lower court sustaining the demurrers was correct, and the judgment is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.