## VERDE RIVER IRRIGATION & POWER DISTRICT v. WORK, Secretary of the ·Interior, et al.

Court of Appeals of District of Columbia.

Submitted February 9, 1928.　Decided March 5, 1928.

No. 4616.

Waters and water courses ⬅222—Secretary of the Interior properly canceled rights of way on failure of irrigation company to secure necessary financial arrangements pursuant to contract (43 USCA §§ 523–525; Act June 17, 1902 [32 Stat. 388]).

Where irrigation company, pursuant to contract with United States, under Act Feb. 21, 1911 (43 USCA §§ 523–525), providing for construction of storage reservoirs and necessary dams, canals, pumping plants, power plants, and irrigation works, and requiring a showing of arrangement for necessary funds for construction within three years, fully recognized validity of such contract until Secretary of the Interior exercised right reserved therein to cancel it for failure to secure financial arrangements, Secretary was justified to cancel rights of way in connection with such irrigation project pursuant to Act June 17, 1902 (32 Stat. 388), since execution of contract did not operate to grant a vested right of way.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Verde River Irrigation & Power District against Hubert Work, Secretary of the Interior, and another.　Decree of dismissal, and complainant appeals.　Affirmed.

C. H. Merillat, of Washington, D. C., for appellant.

D. V. Hunter, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice.　This is an appeal from a decree in the Supreme Court of the District, dismissing, after hearing, appellant's bill to enjoin appellees from proceeding with attempted cancellation or revocation of certain alleged rights of way in connection with appellant's irrigation project for the Verde river and other water courses in Arizona, and for other incidental relief.

In 1903 the Secretary of the Interior, pursuant to the Reclamation Act of June 17, 1902 (32 Stat. 388), withdrew certain reservoir sites and sites·for other irrigation works along the Salt and Verde rivers, and their tributaries, in Arizona.　Other lands, to be served with water, were withdrawn under the "second form" provided by the Reclamation Act.　These withdrawals included the reservoir sites on the Verde river and practically all the lands now embraced in appellant's district.

By the year 1916 a portion of these sites and some of the lands withdrawn for irrigation were included in the Salt river project, constructed by the United States, pursuant to the act of 1902, to supply irrigation from Salt river and from the ordinary flow of the waters of the Verde river.　It was then recognized that the Salt river project would not include all the withdrawn lands.

In 1916 the landowners in the area withdrawn for irrigation, but omitted from the Salt river project, as constructed, formed the Paradise-Verde Water Users' Association, and made due appropriation of all the flood and unused waters of the Verde river for use upon the lands of members of the association.　In 1917 the Association filed with the Land Department an application pursuant to the Act of March 3, 1891 (26 Stat. 1095), and section 2 of the Act of May 11, 1898 (30 Stat. 404 [43 USCA § 951]), for a right of way for the ·Horseshoe reservoir. In March, 1918, the Paradise-Verde irrigation district (now the Verde River irrigation and power district) was organized under the laws of Arizona, and succeeded to the rights and interests of the former association.

The Salt River Valley Water Users' Association, a corporation composed of landowners of the Salt river project, opposed before the Land Department the application of the Paradise-Verde irrigation district for the Horseshoe reservoir site.　This reservoir site had not been restored from the first form reclamation withdrawal, and the Secretary of the Interior heard both claimants, who were seeking to use this site to store waters of the Verde river.　After hearing, it was ruled that the landowners along the Verde river—that is, the Paradise-Verde irrigation district— should be entitled to construct their project, unless an agreement for unified ownership and control could be reached.　The project then included, in addition to the Horseshoe reservoir, other reservoir and canal sites on Cave creek, Skunk creek, and New river.

Thereupon, after a conference with repre-

sentatives of the Paradise-Verde irrigation district and representatives of the Salt River Valley Water Users' Association, a contract was prepared by the Secretary of the Interior. This contract, dated May 21, 1920, as drawn was between the United States and the Paradise-Verde irrigation district, and the Salt River Valley Water Users' Association, designated, respectively, as the parties of the first, second, and third part. The contract recites that:

"Whereas, the party of the third part [the Salt River Valley Water Users' Association] is now in the control and management of the Salt river project in the state of Arizona, constructed under the United States Reclamation Act by the party of the first part; and whereas, there are now available additional waters not now conserved or developed, but which are susceptible of conservation and development, and which can be beneficially used upon lands lying within and adjacent to the said Salt river project; and whereas, the second and third parties are desirous of developing and conserving such waters and beneficially using the same, and purpose to construct the necessary dams, canals, pumping plants, power plants, and irrigation works therefor at their own expense; and whereas, the said party of the first part is desirous of having developed and conserved to the fullest economical extent and beneficially used for the purpose of irrigation and otherwise all of said waters: Now, therefore, the parties hereto in consideration of the premises and agreements hereinafter contained, to be observed, kept, and performed on the part of the second and third parties hereto, it is mutually agreed as follows."

Section 1 of the contract granted to the Paradise-Verde irrigation district "the right and privilege to construct and maintain storage reservoirs on the Verde river upon lands withdrawn under the provisions of the Reclamation Act of June 17, 1902, * * * at the Horseshoe and Camp Verde reservoir sites, and also for other reservoirs on New river, Skunk creek, and Cave creek." This section further provided that the Paradise-Verde irrigation district should "make due application under the laws of the United States for rights of way over unreserved public lands for such dams, canals, and ditches" as might be necessary for its project. This section further provided that the district should apply under the laws of the United States for the right to construct and

maintain power plants in connection with these dams and canals.

By section 3 of the contract the Paradise-Verde irrigation district undertook to proceed diligently with the construction of irrigation works on the granted sites, which works were described, and were to be constructed so as not to increase the danger of damage or loss by floods to the works of the third party; that is, the Salt River Valley Water Users' Association.

By section 5 of the contract the Salt River Valley Water Users' Association was authorized, if it so elected, to enlarge its project, so as to include the lands and works of the Paradise-Verde irrigation district, whose landowners were to be entitled to representation on the board of directors and council of the association.

Section 7 of the contract provided that, in the event the third party—that is, the Salt River Valley Water Users' Association—should not extend its boundaries and accord to the second party proportional representation upon its governing boards, the second party would at all times respect and observe the vested rights of the third party "in and to the waters of the Verde river" theretofore appropriated and belonging to the said party and its shareholders.

By section 8 of the contract it was agreed that all construction should be in conformity with the class of construction theretofore used and employed by the United States in reclamation construction, and should be subject to the approval of the Secretary of the Interior.

Under section 9 it was agreed that legal title to storage dams constructed, or to be constructed, "upon lands withdrawn under the Reclamation Law" should remain in the United States until otherwise agreed between the parties.

Under section 10 it was provided that nothing in the contract should affect any of the rights of the Salt River Valley Water Users' Association, or its shareholders, on lands within its project or in water rights in the Salt and Verde rivers theretofore enjoyed.

By section 11 rights under contracts between the United States and the association were preserved. Sections 12 and 13 of the contract read as follows:

"12. The party of the second part shall within three years from the date hereof show to the satisfaction of the Secretary of the Interior that it has made arrangements so

that the necessary funds shall be available for the construction required hereunder and shall within said period have begun construction, and shall prosecute the same diligently so that the storage dams herein provided to be constructed shall be completed within six years from the date hereof. Upon failure of the party of the second part to comply with the provisions of this paragraph, or within such reasonable extensions of the periods herein stated as the Secretary of the Interior may allow, the Secretary of the Interior may declare this contract abrogated in whole or in part.

"13. The provisions in this agreement contained, to be kept, observed, and performed by the third party shall not become operative or binding upon it until and unless this agreement shall have been ratified and approved by the third party, as approved in its articles of incorporation and by-laws."

This contract was duly executed by the Secretary of the Interior and the Paradise-Verde irrigation district, but it was never signed or ratified by the Salt River Valley Water Users' Association.

Shortly after the execution of the agreement, counsel for the appellant district applied to the Secretary "on behalf of the Paradise-Verde irrigation district, and as supplementary to the contract which was approved by you and by the district on May 21st," for the Secretary's "approval of a grant to the Paradise-Verde irrigation district to occupy the strip of land withdrawn under the Reclamation Act on either side of Verde river from Camp Verde to its mouth for use for canals for irrigation and power development, together with necessary buildings or other structures in connection with such uses, the power development and all structures connected therewith to be regarded as part of and appurtenant to the dams constructed on the Camp Verde and Horseshoe reservoir sites, the right to the use of which was granted by you in the said contract of May 21, 1920." This application was approved by the Secretary.

Thereafter representatives of appellant district conferred with officials of the Land Office as to what should be done to vest the district with proper title to rights of way for the reservoirs and canals embraced in its project, and the district was advised to prepare and file applications for rights of way under the acts of 1891 and 1898, and, as soon as necessary surveys could be made, such applications were filed. On December 1, 1920, the Commissioner of the General Land Office transmitted to the Secretary these applications, with maps showing the projects. In the Commissioner's report and recommendation accompanying the applications, he said:

"Soon after you entered into contracts with the Paradise-Verde irrigation district— May 21–25, 1920—whereby you granted the district certain rights in connection with the so-called Salt river irrigation project in Arizona, representatives of the District visited this office to ascertain what should be done to have the matter properly recorded, etc. After a conference, it was deemed advisable and in keeping with the terms of the said contracts to have the District prepare and file applications for rights of way covering the project in its entirety, pursuant to the provisions of the Act of March 3, 1891 (26 Stat. 1095), and section 2 of the Act of May 11, 1898 (30 Stat. 404).

The Secretary's approval of these applications was in the following terms:

"Pursuant to the provisions of the Act of March 3, 1891 (26 Stat. 1095), as amended by section 2 of the Act of May 11, 1898 (30 Stat. 404), *and in further pursuance of contracts executed by me, May 21, 1920, and May 25, 1920, respectively,* granting certain rights to the applicant company, Paradise-Verde irrigation district, *and subject to the stipulations therein set forth,* this map in six sheets, numbered, 1, 2, 3, 4, 6, and 9, is approved so far as surveyed lands are shown thereon, subject to all valid existing rights and to all the terms, conditions, and covenants of the stipulation executed on behalf of the said district by George D. Christy, its attorney in fact, under date of October 25, 1920, for the protection of the Indian interests involved, but reserving rights of way for canals or ditches constructed by authority of the United States." (Italics ours.)

By 1923 the appellant district had carried on engineering work claimed to have cost $300,000, but had been unable to finance construction. Thereafter, on the applications of appellant, the time limit of the contract was twice extended; a third application was made, which was denied on January 20, 1925, by the Secretary in the following terms: "A further extension does not appear to be warranted, and would not be in the interest of parties concerned, including the settlers and landowners in the district. The petition is accordingly denied."

In his decision on a petition for a reconsideration, the Secretary said:

"As stated in previous decisions, the origi-

nal contract and all grants of rights of way and approvals of the district were on the express conditions agreed to by the district, that the district would, within three years from date of the original contract, or within such extensions as might be granted, show to the satisfaction of the Secretary of the Interior that it had made arrangements for the necessary funds to construct the project and had actually begun construction thereof, and that it would prosecute the same with diligence, so that the storage dams should be completed within six years from date of the original contract or within such extensions as might be granted.

"The district has failed within the time specified, and within the various extensions mentioned, to arrange for the financing of construction; has done no construction work, and up to the present time has failed to submit any evidence which satisfies the department that it is or will be able to construct the project. Accordingly, and in view of the foregoing, the petition for reconsideration is denied."

The theory of appellant's bill is that through what was done by the Secretary it acquired a vested right of way.. The Secretary's position is, first, that the rights granted appellant were, under the contract, subject to its terms, and that the authority to make such a contract was conferred by the Act of February 21, 1911 (36 Stat. 925); and, second, that appellant, having secured all benefits possible under the contract without questioning its validity, cannot now, in equity and good conscience, abandon it or claim rights inconsistent therewith.

The Act of February 21, 1911 (36 Stat. 925), is entitled "An act to authorize the government to contract for impounding, storing, and carriage of water, and to cooperate in the construction and use of reservoirs and canals under reclamation projects, and for other purposes." Section 2 (43 USCA § 524) of this act authorizes the Secretary of the Interior, in carrying out the provisions of the Reclamation Act, and acts amendatory thereof or supplementary thereto, "upon such terms as may be agreed upon, to cooperate with irrigation districts, water users' associations, corporations, entrymen, or water users for the construction or use of such reservoirs, canals, or ditches as may be advantageously used by the government and

24 F.(2d)—56½

irrigation districts, water users' associations, corporations, entrymen, or water users for impounding, delivering, and carrying water for irrigation purposes.   *   *   *"

The Secretary insists that the contract entered into between the United States and appellant district, the validity of which was fully recognized by appellant until the Secretary exercised the right therein reserved to cancel it, was authorized by the above act of 1911. In our view the provisions of that act justify the Secretary's contention. Certainly his interpretation of the act is reasonable. See Ness v. Fisher, 223 U. S. 683, 32 S. Ct. 356, 56 L. Ed. 610; Work v. Mosier, 261 U. S. 352, 43 S. Ct. 389, 67 L. Ed. 693; Work v. Rives, 267 U. S. 175, 45 S. Ct. 252, 69 L. Ed. 561.

It is perfectly apparent that the Secretary never intended to grant to appellant or its predecessors an absolute right of way, and that for the court to give effect to appellant's contentions would amount to a substitution of the judgment and discretion of the court for that of the Secretary. This may not be done.

When appellant's predecessor filed application for right of way for Horseshoe reservoir and other sites, and Salt River Valley Water Users' Association protested. The result of this protest, and other considerations satisfactory to the Secretary, was the contract of 1920. Thereafter, until the abrogation of that contract for nonfulfillment of its terms, it governed the relations of the parties and measured their rights. Having failed to comply with its terms and conditions, appellant now asks the court to compel the Secretary to do what he never intended to do, and what in our view he did not do, namely, grant appellant a right of way.

As suggested by the trial court: "The bill is without equity in any event as the plaintiff and its predecessor accepted the contract, got extensions of time to perform and were treated altogether fairly by the defendant and his predecessor in office. Now that plaintiff has not by performance shown its ability to carry out the terms of the contract having had its benefits it for the first time attacks it. The United States has interests which should be protected against such inequitable conduct."

The decree is affirmed, with costs.

Affirmed.