## VERDE RIVER IRRIGATION & POWER DIST. v. SALT RIVER VALLEY WATER USERS' ASS'N.

### No. 8510.

Circuit Court of Appeals, Ninth Circuit.

Feb. 18, 1938.

P. H. Hayes, of Phoenix, Ariz. (Raymond Allee and Dow B. Roush, both of Phoenix, Ariz., of counsel), for appellant.

Edwin D. Green and Greig Scott, both of Phoenix, Ariz., and Northcutt Ely, of Washington, D. C., for appellee Salt River Valley Water Users' Ass'n.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appeal has been taken from a decree dismissing a bill of complaint wherein appellant sought a decree, adjudging certain alleged easements and rights of way to be valid, adjudging a contract void, and granting injunctive relief.

The Verde river begins in the northwest part of Arizona, flows eastwardly and slightly southerly for a distance, and then flows nearly due south to a point in Maricopa county, where it flows into Salt river. Bartlett, Horseshoe, and Camp Verde damsites are located on the Verde river. Bart-

lett damsite is in Maricopa county, about 25 miles north of the mouth of the river. Horseshoe and Camp Verde damsites are north of Maricopa county, the former being about 45 miles north, and the latter about 90 miles north, of the mouth of the river.

Appellant is an irrigation district organized under the laws of Arizona. Appellee, Salt River Valley Water Users' Association, is an Arizona private corporation, engaged in the business of diverting and delivering to its shareholders waters of Salt river and Verde river for irrigation and domestic purposes, and in producing and selling electrical energy.

By the Act of June 17, 1902, c. 1093, § 3, 43 U.S.C.A. § 416, the Secretary of the Interior was directed to "withdraw from public entry the lands required for any irrigation works," among other things. Pursuant to that act, the Secretary of the Interior withdrew from entry the lands alongside the river, including those at the damsites mentioned, on July 27, 1903, and on December 14, 1904.

Revised Code of Arizona 1928, § 3284, provides that any person "intending to acquire the right to the beneficial use of water, shall make an application to the commissioner for a permit to make an appropriation of water." It also provides what the contents of the application shall be, including "the location, point of diversion and description of the proposed works by which it is to be put to beneficial use." Section 3286 provides among other things that: "If approved, the applicant may construct the necessary works, take steps to apply the water to a beneficial use and perfect the appropriation." Section 3288 provides: "Actual construction, * * * shall begin within one year from the approval of the application, be prosecuted with reasonable diligence and completed within a reasonable time, to be fixed in the permit, not to exceed five years from the date of such approval. The commissioner shall, for good cause shown, extend the time beyond the five years if the magnitude, physical difficulties and cost of the work merit such extension."

The Act of March 3, 1891, c. 561, relating to grants of rights of way, provides in part:

"The right of way through the public lands and reservations of the United States is hereby granted to any * * * , drainage district formed for the purpose of irrigation or drainage and duly organized under the laws of any State or Territory, and which shall have filed or may hereafter file with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization under the same, to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof; * * * Provided, That no such right of way shall be so located as to interfere with the proper occupation by the Government of any such reservation, and all maps of location shall be subject to the approval of the department of the Government having jurisdiction of such reservation." 43 U.S.C.A. § 946.

"Any canal or ditch company desiring to secure the benefits of sections 946 to 949, inclusive, shall, within twelve months after the location of ten miles of its canal, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a map of its canal or ditch and reservoir; and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such right of way." 43 U.S.C.A. § 947.

"The provisions of sections 946 to 949, inclusive, shall apply to all canals, ditches, or reservoirs, heretofore or hereafter constructed, * * * on the filing of the certificates and maps therein provided for. * * * Provided, That if any section of said canal, or ditch, shall not be completed within five years after the location of said section, the rights therein granted shall be forfeited as to any uncompleted section of said canal, ditch, or reservoir, to the extent that the same is not completed at the date of the forfeiture." 43 U.S.C.A. § 948.

Prior to 1925 the laws relating to the institution and construction of projects provided that the Secretary of the Interior should "make examinations and surveys for, and to locate and construct, * * * irrigation works for the storage, diversion, and development of waters, * * * and to report to Congress * * * the results of such examinations and surveys, giving estimates of cost of all contemplated works, the quantity and location of the lands

which can be irrigated therefrom." 43 U.'S.C.A. § 411. It was also provided that "After December 5, 1924, no new project or new division of a project shall be approved for construction or estimates submitted therefor by the Secretary until information in detail shall be secured by him" in certain particulars mentioned. 43 U.S.C.A. § 412. It was also provided that "No irrigation project shall be begun unless and until the same shall have been recommended by the Secretary of the Interior and approved by the direct order of the President of the United States." 43 U.S.C.A. § 413. Finally, it was provided that "Expenditures shall not be made for carrying out the purposes of the reclamation law except out of appropriations made annually by Congress therefor." The Emergency Relief Appropriation Act of 1935, 49 Stat. 115, appropriated four billions of dollars "to be used in the discretion and under the direction of the President." It was further provided, with exceptions unimportant here, that "this appropriation shall be available for the following classes of projects, * * * (b) * * * irrigation and reclamation, $500,000,000."

Prior history to the present litigation is found in Verde River Irrigation & Power District v. Work, 58 App.D.C. 58, 24 F.2d 886. In that case, appellant's bill of complaint alleged that in 1916 the landowners in the area withdrawn for irrigation, who would not be served by the government Salt River Project, formed the Paradise-Verde Water Users' Association, and appropriated all the flood and unused waters of the Verde river. That association filed in 1917 an application for a right of way for the Horseshoe damsite, pursuant to the Act of March 3, 1891. In March, 1918, the Paradise-Verde Irrigation District, later changed to the present name of appellant, was organized and succeeded to the rights of the former association. The application was opposed by appellee. The Secretary of the Interior ruled that appellant should be entitled to construct its project unless an agreement for unified ownership and control could be reached.

Thereafter the Secretary of the Interior prepared a contract between the United States, appellant and appellee, dated May 21, 1920. This contract was not entered into by appellee, however. It granted appellant the right and privilege to construct and maintain storage reservoirs at the Horseshoe and Camp Verde damsites. Under the contract it was necessary for appel-lant to show to the satisfaction of the Secretary of the Interior that it had available funds for the construction required, and to have begun construction, within three years, and to have completed construction within six years. Upon failure of appellant to comply with those provisions, or within reasonable extensions which the Secretary of the Interior might allow, the latter had the right to declare the contract abrogated.

On May 22, 1920, appellant requested approval of a grant to occupy a strip of land on either side of the Verde river from its mouth, northerly to Camp Verde damsite. On May 25, 1920, the Secretary of the Interior approved such grant "subject to the conditions of the contract of May 21, 1920."

The contract and grant were not made pursuant to the Act of March 3, 1891, but under the authority given in 43 U.S.C.A. § 524, to the Secretary of the Interior to co-operate by agreement with irrigation districts for the construction or use of reservoirs, canals, or ditches.

Thereafter, appellant wished to get title to the rights of way and was advised to file applications for such rights of way under the Act of March 3, 1891. The maps were filed with the register of a land office about October 8, 1920. The maps showed, among other things, a canal from Horseshoe damsite south on unsurveyed lands by Bartlett damsite. On December 1, 1920, the Secretary of the Interior approved certain of the maps "in pursuance of the contracts executed by me May 21, 1920 and May 25, 1920, respectively * * * and subject to the stipulation therein set forth" and "so far as surveyed lands are shown thereon, subject to all valid existing rights. * * *" Approval even in this form was not given to the Bartlett damsite.

At about this time certain litigation concerning Horseshoe damsite was disposed of. Verde Water & P. Co. v. Salt River Valley W. Users' Ass'n, 22 Ariz. 305, 197 P. 227, certiorari denied 257 U.S. 643, 42 S.Ct. 53, 66 L.Ed. 412.

Appellant twice secured extensions of time specified in the contract of May 21, 1920. Its application for a third extension was denied on January 20, 1925, on the ground that no construction work had been done, and appellant had failed to submit satisfactory evidence that it was or would be able to construct the project. Appel-

lant thereupon brought suit to enjoin the Secretary of the Interior from canceling the alleged rights of way. The suit was dismissed on the ground that there was no grant of "an absolute right of way" and that whatever right of way was granted was subject to the right of cancellation specified in the contract.

The bill before us alleges that appellant had within its boundaries approximately 85,000 acres of arable, irrigable lands, which would be highly productive only in the event of application of irrigation water thereto; that appellant had adopted a general plan for the construction of an irrigation system for the reclamation of its lands, which plan provided for construction of dams on the Verde River at Camp Verde, Horseshoe, and Bartlett damsites; and that utilization of each of such damsites was necessary to enable appellant to carry out its general plan.

The bill also alleges that appellant procured, pursuant to the provisions of the Water Code of Arizona, Laws 1919, c. 164, as of April 17, 1920, a permit, which has not been revoked, from the state water commissioner to appropriate "all of the surplus and flood waters of the Verde River and all thereof is necessary for storage and conservation for use upon the lands of" appellant. In its brief appellant states that the approval was made on February 9, 1934. It is also alleged that appellant had secured permits, prior to June 3, 1935, from the water commissioner of Arizona, for the construction of dams at the Camp Verde and Horseshoe damsites; that prior to June 3, 1935, appellant had filed application with such commissioner for a permit to construct a dam at the Bartlett damsite; and that such application is pending, accords to appellant a right to a permit as of the date of its filing, and constitutes a right superior to any which appellee has or may acquire.

The bill further alleges execution and cancellation of the contracts with the then Secretary of the Interior on May 21, 1920, and May 25, 1920; that thereafter appellant applied for and was granted easements and rights of way under the Act of March 3, 1891 "upon identical lands and sites embraced in" its 1920 grant, as shown by a contract of June 30, 1930. The latter contract provides certain things concerning water to be supplied Indians, and that failure to comply with such provisions should ipso facto render the rights of way granted null and void.

It was also alleged that on October 14, 1935, the Commissioner of the General Land Office notified appellant that the easements and rights of way were held for cancellation, and that on February 26, 1936, the Secretary of the Interior sustained the ruling of the Commissioner; that both rulings were void because the grants were grants in præsenti conferring vested rights on appellant, which could be canceled only by a suit brought by the Attorney General of the United States; and that the easements and rights of way are now valid, notwithstanding the expiration of the five years specified in 43 U.S.C.A. § 948, because the Reconstruction Finance Corporation and the Federal Emergency Administration of Public Works had accepted appellant's application for a loan, encouraged prosecution of the application, and had made an allotment, and therefore the period of time intervening between the date of reception of appellant's application (July 28, 1932) and the date of cessation of work now being performed could not, legally or equitably, be considered as part of the five-year period.

Appellee contends that we may take judicial notice of the maps presented by it, which were the same ones presented by appellant in its 1920 application. In addition to the endorsement of December 1, 1920, related above, appears an endorsement dated June 30, 1930, by the Secretary of the Interior, that certain of the maps were " * * * approved as to surveyed lands involved, subject to all valid existing rights and to the terms and conditions of an agreement made this day between [appellant] and the United States * * * "

As stated above, no approval was given to the Bartlett damsite, and canal lines shown at or near that damsite are located on unsurveyed lands.

It is further alleged that about June 3, 1935, defendant Ickes, as Secretary of the Interior, knowing that appellee had no permit or other right to appropriate waters of the Verde river, entered into an agreement with appellee, whereby, among other things, the United States is obligated to allot to appellee the sum of $3,500,000 with which to construct a storage dam, reservoir, and appropriate works on the Bartlett site over the identical area covered by

appellant's existing easements and rights of way.

Appellant alleges that this latter contract was not made pursuant to 43 U.S.C.A. §§ 411, 412, 413, because the project was not, prior to execution of the contract, approved either by the President or the Chief of Engineers, or submitted to Congress for approval, and no appropriation therefor was made by Congress. Appellant further alleges that, if the contract was made pursuant to the Emergency Relief Appropriation Act, it is void because that act is unconstitutional on three grounds: (a) It is vague, indefinite, and general as to its purposes and intent; (b) that it confers an uncontrolled discretion on the President; (c) it illegally delegates legislative powers to the President; that. the acts of the Secretary of the Interior are clouds on appellant's easements and rights of way.

Finally, it is alleged that appellee and defendant Ickes are engaged in work preliminary to actual construction of the dam, and, unless restrained, will construct it and the reservoir, thus unlawfully invading subsisting rights of appellant, and destroying appellant's project.

The prayer asks (1) that appellant's easements and rights of way be adjudged valid; (2) that the contract entered into between defendant Ickes and appellee be adjudged void; (3) that appellee and Ickes be enjoined from proceeding under that contract, or otherwise in the construction of the Bartlett' dam and reservoir.

Appellee filed a motion to dismiss on the following grounds: (1) The facts alleged are insufficient to constitute a cause of suit; (2) it appears on the face of the bill that the "suit is not one arising wholly between citizens of different States"; (3) there is a fatal defect of parties defendant in that the United States is an indispensable party and has not consented to be sued; and (4) defendant Ickes has not been subjected to the jurisdiction and it would be inequitable to proceed without him.

The motion came on for hearing on October 12, 1936, at which time appellant filed a motion for an order requiring defendant Ickes to appear and plead on a day designated by the court, pursuant to section 57 of the Judicial Code, 28 U.S.C.A. § 118. On January 27, 1937, the court below granted the motion to dismiss, and denied appellant's motion. Thereafter appellant moved for leave to file a second amended bill, which was denied. The second amended bill was changed slightly by allegations concerning appellant's appropriation of the waters of the Verde river. Appellant elected to stand on its amended bill, and final decree was entered on March 8, 1937. Appeal was taken from that decree.

Appellee raises several questions regarding indispensable parties, as well as questions on the merits. In Bourdieu v. Pacific Oil Co., 299 U.S. 65, 70, 57 S.Ct. 51, 53, 81 L.Ed. 42, it is said: "The rule is that if the merits of the cause may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done." On page 71, of 299 U.S., 57 S.Ct. 51, 53, 81 L.Ed. 42, it is said: "the obvious reply of the court to a suggestion that other parties are indispensable is that, since the bill states no cause of action against any one, the rights of absent parties are in no way threatened by it."

█ Appellant contends first, that the Secretary of the Interior had no power to revoke the easements and rights of way. The Act of March 3, 1891, was construed in Kern River Co. v. United States, 257 U.S. 147, 151, 42 S.Ct. 60, 61, 66 L.Ed. 175; where it was said: "These rights of way were to be obtained by making application at the local land office and ultimately securing the approval by the Secretary of the Interior of a map of the ditch, canal or reservoir. * * * The grant was to become effective when the approval was given; that is to say, the right of way was then to vest in the applicant for the purpose indicated in the act."

If the maps were approved the grant vested, and gave applicant "a limited fee on an implied condition of reverter in the event the grantee ceased to use or retain the land for the purpose indicated in the act." Id., 257 U.S. 147, at page 152, 42 S.Ct. 60, 62, 66 L.Ed. 175. The provision, 43 U.S.C.A. § 948, requiring completion of construction, is a condition subsequent, which requires for forfeiture "some appropriate judicial or legislative action." Spokane, etc., Ry. v. Wash. & G. North. Ry., 219 U.S. 166, 175, 31 S.Ct. 182, 184, 55 L.Ed. 159; Union Land & Stock Co. v. United States, 9 Cir., 257 F. 635, 638. Therefore, the attempted revocation was ineffectual if the grant vested.

The allegations of the bill are that appellant obtained a grant. However, if by judicial knowledge we know that the fact pleaded is out of harmony with the fact judicially known, the allegation is disregarded. Greeson v. Imperial Irr. Dist., 9 Cir., 59 F.2d 529, 530, and cases cited. We believe we may take judicial knowledge of the approval of the maps on file in the Department of the Interior, and of the decision of the Commissioner of the General Land Office, that the maps submitted with the 1920 application were resubmitted when the grant alleged was made. Id., 59 F.2d 529, at page 531, and cases cited.

It appears from the approval placed on the maps by the Secretary of the Interior that approval of them was given "as to surveyed lands involved"; that there was no approval of the map of the Bartlett damsite, nor of unsurveyed lands; and that Bartlett damsite and reservoir are on unsurveyed lands. It is therefore apparent, we believe, that appellant obtained no easements or rights of way, and its bill was properly dismissed.

It is unnecessary to discuss the remaining assignments and contentions.

Affirmed.